UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
ANNA E. PETRISCH,

        Plaintiff,

   -against-

HSBC BANK USA, INC., JOHN
KOURKOUTIS, and MARLEN KATZ,

        Defendants.
------------------------------X

**NOT FOR PUBLICATION**

<u>**MEMORANDUM AND ORDER**</u>

07-CV-3303 (KAM)(JMA)

**MATSUMOTO, United States District Judge:**

        Plaintiff Anna E. Petrisch ("plaintiff") commenced this action against HSBC Bank USA, National Association ("HSBC" or "the bank"),[1] John Kourkoutis ("Kourkoutis"), and Marlen Katz ("Katz") (collectively, "defendants"), alleging employment discrimination on the basis of her age, national origin, and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (*See generally* Complaint dated 7/15/2007 ("Compl.").)

---

[1] Plaintiff inaccurately names "HSBC BANK USA, INC." as a defendant in this action. As noted by defendants, "HSBC Bank USA, National Association" is the correct name of the financial institution that plaintiff intends to sue. (ECF No. 56, Memorandum in Support of Motion for Summary Judgment ("Defs.' Mem.") at 1.) The Clerk of the Court is respectfully directed to amend the caption on the docket to reflect this change.

1

Plaintiff alleges that defendants subjected her to a hostile work environment because of her age,[2] national origin, and sex and unlawfully retaliated against her for engaging in protected activity.  Plaintiff further claims that defendants Kourkoutis and Katz are subject to individual liability under the NYSHRL and NYCHRL as employers and aiders/abettors of unlawful discriminatory conduct.[3]

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of plaintiff's Complaint in its entirety. (ECF No. 55, Defendants' Motion for Summary Judgment dated 1/20/2012 ("Defs.' Mot.").) For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

The following facts, taken from the parties' Rule 56.1 statements and the exhibits and deposition testimony cited and annexed to the parties' motion papers, are undisputed unless otherwise noted.  The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to

---

[2] In this action, plaintiff has not asserted a claim pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq.  Accordingly, plaintiff's age-based discrimination claims proceed under the NYSHRL and NYCHRL only.

[3] Although plaintiff alleged a constructive discharge claim against defendants in her Complaint, (Compl. ¶ 14), she abandoned her constructive discharge claim during oral argument on defendants' motion for summary judgment. (ECF No. 66, Transcript of Oral Argument on Defs.' Mot. held on 9/7/2012 ("Tr.") at 11.)  Accordingly, the court need not discuss that claim in ruling on defendants' motion for summary judgment.

plaintiff. *See Spiegel v. Schulmann*, 604 F.3d 72, 77, 81 (2d Cir. 2010).

Plaintiff, a Hispanic female in her sixties, has several years of experience in the commercial banking industry and began working for HSBC in June 2005. (*See* Compl. ¶ 5; ECF No. 57, Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs.' Rule 56.1 Stmt.") ¶ 1; ECF No. 46, Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl.'s Rule 56.1 Resp.") ¶ 1; ECF No. 58, Exh. 1, Deposition of Anna Petrisch on 1/8/2010 ("Petrisch Dep. – 1/8/10") at 14:1-15:4, 97:12-98:19; ECF No. 58, Exh. 3, Deposition of Anna Petrisch on February 24, 2011 ("Petrisch Dep. - 2/24/11") at 150:13-18.) The details of plaintiff's employment history at HSBC, the allegations giving rise to the instant action, and the relevant procedural history are set forth in further detail below.

## I. <u>Plaintiff's Employment at HSBC</u>

### A. **Rego Park Branch Employment Interview**

In 2005, plaintiff interviewed for an assistant sales manager position in the HSBC Rego Park Branch (the "Rego Park Branch"). (Defs.' Rule 56.1 Stmt. ¶ 2; Pl.'s Rule 56.1 Resp. ¶ 2; Petrisch Dep. – 1/8/10 at 14:23-15:9.) During that interview, Rego Park Branch Manager John Kourkoutis spoke with plaintiff about her job experience at other financial institutions and her fluency in both English and Spanish. (*See*

ECF No. 58, Exh. 4, Deposition of John Kourkoutis ("Kourkoutis Dep.") at 11:17-12:23.)  Kourkoutis testified that Plaintiff's Spanish language skills were important because HSBC's clientele in Rego Park included many Spanish-speaking individuals. (*Id.* at 12:9-19.)

On June 6, 2005, shortly after her interview with Kourkoutis, plaintiff was hired as the assistant sales manager of the Rego Park Branch. (Defs.' Rule 56.1 Stmt. ¶¶ 1-2; Pl.'s Rule 56.1 Resp. ¶¶ 1-2.)  In her capacity as assistant sales manager, plaintiff reported directly to Kourkoutis and was responsible for coordinating the branch's overall sales, organizing branch meetings, internal contests, and campaigns, and improving the branch's profitability and productivity. (*See* Defs.' Rule 56.1 Stmt. ¶ 3; Pl.'s Rule 56.1 Resp. ¶ 3; Kourkoutis Dep. at 11:9-16.)

**B.    September 2005 Action Plan**

On September 23, 2005, three months after plaintiff was hired, Kourkoutis spoke with plaintiff regarding her work performance and thereafter placed her on an Action Plan. (*See* Defs.' Rule 56.1 Statement ¶ 4; Pl.'s Rule 56.1 Resp. ¶ 4; ECF No. 58, Exh. 6, E-mail of John Kourkoutis Memorializing September 2005 Action Plan ("September 2005 Action Plan").)  In the September 2005 Action Plan, Kourkoutis outlined administrative and strategic goals for plaintiff's improvement

as the new assistant sales manager of the Rego Park Branch and indicated that he "want[ed] to see [plaintiff] succeed." (September 2005 Action Plan.) Acknowledging plaintiff's "proficien[cy] in opening DDA & TDA accounts," Kourkoutis noted that plaintiff "must lead by example." (*Id.*) Plaintiff, however, alleges that Kourkoutis instituted the September 2005 Action Plan in retaliation to plaintiff's complaints about Kourkoutis' alleged discriminatory and fraudulent banking practices. (Pl.'s Rule 56.1 Resp. ¶ 4; Petrisch Dep. – 11/23/10 at 78:7-79:6.) Specifically, plaintiff testified that she "know[s]" she was placed on the September 2005 Action Plan "because [she] was a whistleblower." (Petrisch Dep. – 11/23/10 at 79:3-6.)

C. **2005 Executive Performance Management Review**

On February 28, 2006, Kourkoutis issued plaintiff's 2005 Executive Performance Management Review ("2005 Performance Review"), giving plaintiff a "4" out of "5" overall assessment rating.[4] (Defs.' Rule 56.1 Statement ¶ 5; Pl.'s Rule 56.1 Resp. ¶ 5; ECF. No. 58, Exh. 7, 2005 Performance Review at 7.) In the 2005 Performance Review, Kourkoutis acknowledged that plaintiff had "extensive experience as an Assistant Manager" but noted that plaintiff faced "difficulties adjusting to the way HSBC

---

[4] A rating of "4" indicated that plaintiff "[did] not meet expectations and did not consistently perform duties as outlined." (*See* ECF No. 58, Exh. 9, 2006 Executive Performance Management Review ("2006 Performance Review") at 1.)

does business and has not acclimated to [HSBC's] systems and . . . procedures." (2005 Performance Review at 4.) Kourkoutis identified several other areas of needed improvement including plaintiff's communication skills, work efficiency, and use of HSBC's technology systems. (*Id.* at 5-6.) In particular, Kourkoutis explained that plaintiff often speeds through client interactions without understanding that "the demographic area . . . in Rego Park and client investment sophistication is different and higher than in Brooklyn," where plaintiff previously worked. (*Id.* at 4.) Further, Kourkoutis noted that plaintiff occasionally "speaks so quickly" that he must "ask her to repeat herself." (*Id.* at 6.) Plaintiff claims that this comment was targeted toward her accent and therefore evinces Kourkoutis' hostility towards her national origin. (Pl.'s Rule 56.1 Resp. ¶ 15.)

Despite plaintiff's weaknesses, Kourkoutis commended plaintiff's passion for her job, recognizing that "[s]he cares, and that is not something that you often come across in this business." (2005 Performance Review at 6.) Finally, Kourkoutis described his plans to develop an action plan for plaintiff to allow her to "get back on track and open other options for her." (*Id.*) Plaintiff signed the 2005 Performance Review "under protest" on February 28, 2006 because of her disagreement with Kourkoutis' management style. (*See* Defs.' Rule 56.1 Statement

¶ 6; Pl.'s Rule 56.1 Resp. ¶ 6; ECF No. 58, Exh. 8, Plaintiff's Signature of 2005 Performance Review; Petrisch Dep. - 11/23/2011 at 87:7-88:16.)

### D. 2006 Performance Improvement Plan

On April 6, 2006, Kourkoutis determined that plaintiff's performance had "been below expectations," and placed plaintiff on a Performance Improvement Plan ("PIP") from April 7, 2006 until June 6, 2006 ("2006 Performance Improvement Plan" or "2006 PIP"). (Defs.' Rule 56.1 Statement ¶ 7; Pl.'s Rule 56.1 Resp. ¶ 7; ECF No. 60, Certification of John Kourkoutis in Support of Defendants' Summary Judgment Motion ("Kourkoutis Cert.") ¶ 3.) In that 2006 PIP, Kourkoutis stated that plaintiff would be required to achieve the goals listed in the plan during the two-month PIP period. (ECF No. 60, Exh. 1, 2006 PIP at 1.) Specifically, Kourkoutis indicated that plaintiff must know all HSBC policies and procedures to eliminate errors, improve her management and communication skills, and earn her professional sales licenses. (*Id.* at 2.) Kourkoutis explained that he enrolled plaintiff in training classes to improve her skills in management and sales. (*See id.*)

Plaintiff testified that Kourkoutis issued the poor performance evaluation in her 2006 Performance Improvement Plan to retaliate against plaintiff for complaining about purported fraudulent activity and because of her disability; however,

plaintiff does not assert any claims for disability-based discrimination.[5] (Petrisch Dep. – 2/24/11 at 142:4-22.) Plaintiff did not testify, however, that she made complaints about discrimination against her on account of her age, sex, national origin, or race. (*See id.*) Nor did plaintiff testify that defendants retaliated against her based on protected activities concerning those characteristics. (*Id.*)

On April 7, 2006, one day after being placed on the Performance Improvement Plan, plaintiff filed a formal "Ethics and Compliance" report with HSBC's employee tip line, alleging that Kourkoutis, Financial Advisor Mark Dray, and Premier Relationship Manager Marlen Katz fraudulently sold annuities to certain customers who thought they were buying Certificates of Deposit in order to increase their commissions. (Defs.' Rule 56.1 Statement ¶ 8; Pl.'s Rule 56.1 Resp. ¶ 8; ECF No. 59, Certification of Maria A. Malanga in Support of Defendant's Summary Judgment Motion ("Malanga Cert.") ¶ 5; ECF No. 59, Exh. 1, Ethics and Compliance Report at 1-2.) During her employee tip line call, plaintiff reported that she witnessed Kourkoutis, Katz, and Dray target older people, Hispanics, Asians, and foreigners with limited-English proficiency. (Ethics and Compliance Report at 1.) Plaintiff reported that the fraudulent

---

[5] Despite her allegation that Kourkoutis issued the 2006 Performance Improvement Plan because of her disability, plaintiff does not assert a cause of action for disability discrimination under the NYSHRL, NYCHRL, or the Americans with Disabilities Act of 1990 in her Complaint.

activity was ongoing at the Rego Park Branch since November 2005. (*Id.*)

### E. Alleged Discriminatory Incidents at Rego Park Branch

Plaintiff claims that her supervisors and co-workers subjected her to sustained hostility and abuse during her tenure at the Rego Park Branch. In particular, plaintiff's testimony describes the following incidents involving Katz, Kourkoutis, and three of plaintiff's female co-workers.[6]

#### 1. Marlen Katz

Plaintiff testified that Katz, a co-worker who does not supervise plaintiff, told her that she was "too old" on three separate occasions. (*See* Petrisch Dep. – 1/8/10 at 127:2-129:20; ECF No. 58, Exh. 5, Deposition of Marlen Katz ("Katz Dep.") at 8:17-24.) According to plaintiff's testimony, Katz first called her "too old" after plaintiff stated that he had to obey certain policies and procedures set forth by the Federal Deposit Insurance Corporation. (*Id.* at 129:7-9.) After that incident, Katz allegedly called plaintiff old again, although plaintiff does not recall the date of this incident. (*Id.* at 129:11-13.) On the third occasion, Katz purportedly called plaintiff old in front of Kourkoutis, who allegedly failed to call human resources about the comment. (*Id.* at 129:11-20.)

---

[6] The evidentiary record before the court does not establish the specific dates on which any of these alleged incidents occurred.

Plaintiff clarified that Katz was the only person to make comments to her about her age.[7] (*Id.* at 74:11-19.)

### 2. John Kourkoutis

Plaintiff testified that, on one occasion, plaintiff's supervisor Kourkoutis screamed at her to "concentrate" on certain numbers attached to a bulletin board in the branch. (Petrisch Dep. – 2/24/11 at 138:24-139:24.) Plaintiff averred that she could not see the small-print on the bulletin board because her vision was failing after her eye operation and was thus embarrassed in front of her co-workers as a result of her inability to see. (*Id.*) In plaintiff's view, Kourkoutis screamed at her in order to embarrass her because of her age and her national origin, but she did not present any evidence of comments by Kourkoutis regarding her age and national origin. (Petrisch Dep. – 1/8/10 at 96:9-97:17.) Plaintiff testified that Kourkoutis also screamed at another Rego Park Branch employee named Tanya. (Petrisch Dep. – 2/24/11 at 138:16-19.)

---

[7] During her deposition, plaintiff also testified that Katz made fun of the way she walked and talked. (Petrisch Dep. – 1/8/10 at 132:16-20.) Plaintiff, however, acknowledged that she never heard Katz make fun of her and instead testified that Katz did so only in front of the tellers as captured by camera footage. (*Id.* at 132:24-133:20.) The court disregards plaintiff's testimony regarding Katz's derogatory remarks about how plaintiff walked and talked because plaintiff did not hear such remarks and thus had no personal knowledge of those remarks. Nor did plaintiff submit any evidence that the remarks were made. *See DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) ("[W]here a party relies on affidavits or deposition testimony to establish facts, the statements must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (internal quotation marks omitted)).

Plaintiff further testified that Kourkoutis discriminated against her because she was Hispanic by failing to "protect [her]" from her co-workers who allegedly harassed her. (Petrisch Dep. – 1/8/10 at 89:4-10.) Plaintiff believed that Kourkoutis was "listening to [her] . . . [and] knew about [her] problem[s]" with her co-workers but nevertheless permitted the hostility toward her. (*Id.* at 97:18-23.) Plaintiff further stated that "Kourkoutis was the problem because he allow[ed] all these staff to make fun of [her], to all Hispanic, [to] the way [she] dress[ed]." (*Id.* at 110:17-19.) Yet, plaintiff also submitted evidence indicating that Kourkoutis e-mailed the Rego Park Branch staff with the following warning: "I would expect that when you are completing the sales board in the back, that you put down your own results. Not anyone else's. I certainly do not expect anyone to be [disrespectful] to any colleagues." (ECF No. 64, Exh. 1, E-mails from John Kourkoutis to HSBC Staff ("Kourkoutis E-mails") at 6.)

According to plaintiff, Kourkoutis took away plaintiff's "privileges" of serving as the officer in charge of the branch during his absence. (Petrisch Dep. – 1/8/10 at 97:24-98:19.) Plaintiff stated that Kourkoutis took away these privileges because she is Hispanic, over forty years old, and because of her complaints about defendants' purported fraudulent banking activity. (*Id.* at 98:16-19.) Kourkoutis testified that

he sent at least one e-mail to the Rego Park Branch staff
informing them that plaintiff would no longer be in charge in
his absence, but Kourkoutis stated that he does not recall how
many times he sent that e-mail. (Kourkoutis Dep. at 115:16-25.)
Plaintiff has submitted e-mails sent by Kourkoutis between
September and November 2006 in which Kourkoutis named another
HSBC employee as the officer in charge in his absence.
(Kourkoutis E-mails at 1-2, 5, 9.)

Plaintiff further testified that Kourkoutis asked her
to take HSBC training classes in Jersey City, New Jersey instead
of in New York, closer to plaintiff's Long Island residence
because of her age and national origin. (*See* Petrisch Dep. –
1/8/10 at 92:4-94:1.)  Plaintiff stated that other HSBC
employees "went to New York [for] the classes" and testified
that she "belie[ved]" Kourkoutis wanted her to go to New Jersey
because of her national origin and age. (*Id.* at 92:9-12)
Plaintiff admitted that she "cannot say what [Kourkoutis was]
thinking" in requiring her to go to New Jersey for classes,
noting only that she "can say [her] feeling[s]" that he required
her to do so based on her age, sex, national origin, and
whistle-blower status. (*Id.* at 143:18-144:4.)

Plaintiff further testified that she was not invited
to "pow wow" meetings with Kourkoutis, Katz, and Dray, as well
as other men, because she is a woman. (*Id.* at 138:21-139:17.)

Plaintiff acknowledged, however, that she sometimes saw one of her female co-workers, Katrina Nittis, attend those "pow wow" meetings. (*Id.* at 140:4-10.)  Plaintiff expressed that she does not know what was discussed during the alleged "pow wow" meetings or whether additional female co-workers ever attended those meetings. (*Id.* at 140:4-24, 143:10-14.)

Finally, plaintiff testified that Kourkoutis wanted her to leave the Rego Park Branch because of her age and national origin and, on one occasion, urged her to take disability leave. (*Id.* at 94:3-96:3.)  According to plaintiff's testimony, Kourkoutis specifically "wanted [plaintiff] to take a leave of absence when [she] didn't need a leave of absence." (*Id.* at 94:6-8.)

### 3.  *Plaintiff's Female Co-Workers*

Three of plaintiff's female co-workers — Desiree Greenfield, Nisreen Ali, and Katrina Nittis — allegedly told plaintiff that they "don't have to listen to [her]"; said "I hate you" to plaintiff; and wrote "big zero" next to plaintiff's name on a blackboard in the Rego Park Branch. (Petrisch Dep. – 1/8/2010 at 71:1-72:13, 86:5-87:13; Petrisch Dep. – 2/24/11 at 150:21-151:8.)  Plaintiff testified that she believed her three co-workers wrote "zero" next to her name because of her Hispanic heritage and her age. (Petrisch Dep. – 1/8/2010 at 86:29-87:9.) Plaintiff also testified that Rego Park Branch tellers told her

that Greenfield, Ali, and Nittis made fun of the way plaintiff

walked, talked, and dressed.[8] (*Id.* at 68:2-24, 86:5-8.)  In

plaintiff's view, Greenfield, Ali, and Nittis harassed her

because plaintiff complained that Greenfield ran her husband's

business in the back of the office. (Petrisch Dep. – 2/24/11 at

151:18-153:21.)  Plaintiff averred that that branch employees,

including Greenfield, Ali, and Nittis, put her through a "living

hell" because of her complaints of the Rego Park Branch's

purportedly fraudulent banking activity. (Petrisch Dep. –

11/23/10 at 79:19-25.)

**F.   Plaintiff's Transfer to 108th Street Branch**

In January 2007, after numerous requests by plaintiff,

HSBC granted plaintiff a transfer from the Rego Park Branch to

the 108th Street Branch, where she reported to Mario Verardo.

(Defs.' Rule 56.1 Statement ¶ 10; Pl.'s Rule 56.1 Resp. ¶ 10;

Kourkoutis Cert. ¶ 4; Petrisch Dep. – 11/23/2011 at 81:15-24.)

On March 26, 2007, plaintiff officially transferred to the 108th

---

[8] When asked how she knew that Greenfield, Ali, and Nittis made
fun of how she talked, plaintiff responded that "[t]he tellers used to tell
[her]" and did not testify that she directly heard any of the comments
regarding her language. (*See* Petrisch Dep. – 1/8/2010 at 71:2-20.)  The court
thus disregards plaintiff's testimony regarding Greenfield, Ali, and Nittis'
purported derogatory remarks about how plaintiff spoke because such testimony
is not based on her personal knowledge and is inadmissible hearsay. *See*
*DiStiso*, 691 F.3d at 230; *Pamphile v. Tishman Speyers Prop., L.P.*, No. 03-CV-
5964, 2006 WL 1806505, at *5 n.2 (E.D.N.Y. June 29, 2006) ("Hearsay evidence
is inadmissible on a motion for summary judgment." (citing *Raskin v. Wyatt
Co.*, 125 F.3d 55, 66 (2d Cir. 1997))).  By contrast, the record sufficiently
establishes that plaintiff had personal knowledge that Greenfield, Ali, and
Nittis stated directly to plaintiff that they hated her, stated that they did
not have to listen to her, and wrote a big zero next to her name because she
witnessed those events firsthand. (Petrisch Dep. – 1/8/2010 at 71:21-72:20,
74:4-10, 86:14-15.)

Street Branch, where she remained an assistant sales manager. (Defs.' Rule 56.1 Statement ¶ 10; Pl.'s Rule 56.1 Resp. ¶ 10.) Although plaintiff initially testified that she had "no problems" at the 108th Street Branch, (Petrisch Dep. — 2/24/2011 219:24-220:6), plaintiff later claimed that she encountered problems at the 108th Street Branch when "defendant Katz showed up at said location to harass her after the transfer,"[9] (Pl.'s Rule 56.1 Resp. ¶ 11). Plaintiff concedes that she did not resign from her employment with HSBC on May 5, 2006 nor at any other time. (Defs.' Rule 56.1 Statement ¶ 17; Pl.'s Rule 56.1 Resp. ¶ 17; Malanga Cert. ¶ 4.)

## G. Katz and Kourkoutis' HSBC Ownership Interest and Supervisory Authority

The record establishes the following relevant facts regarding the ownership interests and supervisory authority of individual defendants Kourkoutis and Katz.

Other than owning a modest amount of HSBC stock, Kourkoutis and Katz do not have an ownership interest in HSBC. (Defs.' Rule 56.1 Statement ¶ 18; Kourkoutis Cert. ¶ 5; ECF No. 61, Certification of Marlen Katz ("Katz Cert.") ¶ 2.) During plaintiff's employment at the Rego Park Branch, Katz had no supervisory control or authority over plaintiff, and his position — Premier Manager — was below plaintiff's assistant

---

[9] Plaintiff's Rule 56.1 Response and Certification did not describe the nature of Katz's alleged harassment.

sales manager position. (Defs.' Rule 56.1 Statement ¶ 19; Pl.'s
Rule 56.1 Resp. ¶ 19; Katz Dep. at 8:17-24.)  Further, Katz had
no authority to hire, fire, or determine the pay rate of any
Rego Park Branch employees. (Defs.' Rule 56.1 Statement ¶¶ 20-
21; Katz Cert. ¶¶ 3-4.)  Katz did not maintain personnel files
for Rego Park Branch employees. (Defs.' Rule 56.1 Statement
¶ 22.)

        Although Kourkoutis supervised work schedules of Rego
Park Branch employees during plaintiff's tenure at HSBC, (Defs.'
Rule 56.1 Statement ¶ 23; Pl.'s Rule 56.1 Resp. ¶ 23; Kourkoutis
Cert. ¶ 9), he did not have the authority to hire or fire
employees of the Rego Park Branch without the review and
approval of HSBC's Human Resources Department. (Kourkoutis Cert.
¶ 6.)  Moreover, Kourkoutis had no authority to determine the
pay rate or method of Rego Park Branch employees because Human
Resources made those determinations. (*Id.* ¶ 7.)  Like Katz,
Kourkoutis did not maintain personnel files for Rego Park Branch
employees. (*Id.* ¶ 8.)

## II.  **Relevant Procedural History**

        On or about September 6, 2006, plaintiff filed a
verified complaint with the New York State Division of Human
Rights ("State Division"), which was dual filed with the United
States Equal Employment Opportunity Commission ("EEOC"),
alleging discrimination and retaliation on the basis of age,

sex, and national origin. (Defs.' Rule 56.1 Statement ¶ 9; Pl.'s Rule 56.1 Resp. ¶ 9; ECF No. 58, Exh. 10, Administrative Complaint Before State Division and EEOC.)

On March 23, 2007, the State Division dismissed plaintiff's complaint on grounds of administrative convenience because plaintiff intended to pursue federal remedies in court. (Defs.' Rule 56.1 Statement ¶ 12; Pl.'s Rule 56.1 Resp. ¶ 12; ECF No. 58, Exh. 11, State Division Determination and Order of Dismissal.)  On May 8, 2007, the EEOC closed its file on plaintiff's discrimination charge, adopted the findings of the State Division, and issued plaintiff a right to sue letter. (Defs.' Rule 56.1 Statement ¶ 13; Pl.'s Rule 56.1 Resp. ¶ 13; ECF No. 58, Exh. 12, EEOC Dismissal and Notice of Rights.) After receiving her right to sue letter, plaintiff filed her Complaint in the instant action on August 9, 2007, alleging age, national origin, and sex discrimination. (See *generally* Compl.) On January 20, 2012, defendants filed their motion for summary judgment, and plaintiff filed her Opposition on March 6, 2012. (*See* Defs.' Mot.; ECF No. 45, Plaintiff's Memorandum of Law in Opposition to Defs.' Mot. ("Pl.'s Opp.").)

## DISCUSSION

### I.   Summary Judgment Standard

"Summary judgment is appropriate where there is no genuine issue as to any material fact and . . . the record taken

as a whole could not lead a rational trier of fact to find for the non-moving party." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (internal quotation marks omitted). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." *Id.* (internal quotation marks omitted). Moreover, an issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56[] to set forth specific facts showing that there is a genuine issue of material fact to be tried." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993). The nonmoving party may not, however, "rely simply on conclusory statements or on contentions that the affidavits supporting the

motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Id.* at 532-33 (internal quotation marks and citations omitted); *see also Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) ("Reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment.").

The court is mindful that "[e]mployment discrimination cases raise special issues on summary judgment." *Kenney v. N.Y.C. Dep't of Educ.,* No. 06-CV-5770, 2007 WL 3084876, at *3 (S.D.N.Y. Oct. 22, 2007). Specifically, employment discrimination cases that involve a dispute concerning the "employer's intent and motivation," may not be suitable for summary judgment. *Id.; see Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2008). The Second Circuit, however, has long ago "remind[ed] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted); *see also Holcomb,* 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). The moving party, here defendants, "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22

F.3d 1219, 1223–24 (2d Cir. 1994); *James v. Enter. Ass'n of Steamfitters Local 638*, No. 06-CV-680, 2010 WL 3394668, at *2 (E.D.N.Y. Aug. 23, 2010) ("[T]he Court of Appeals in *Gallo* nevertheless recognizes that, under *Celotex*, a defendant is entitled to summary judgment by showing that *little* or no evidence may be found in support of the nonmoving party's case." (internal quotation marks omitted)).

## II. <u>Plaintiff's Certification</u>

In support of her Opposition to defendants' motion for summary judgment, plaintiff attached a signed Certification, in which she asserts several additional factual allegations to bolster her claims. (*See* ECF No. 49, Certification of Anna Petrisch ("Pl.'s Cert.").)

Specifically, for the first time in her Certification, plaintiff alleges that Kourkoutis "told [her] that the clientele at the Rego Park branch was predominately white and that they were more sophisticated and cultured than the clientele [she] was accustomed to" at her previous job in Brooklyn. (Pl.'s Cert. ¶ 5.) Plaintiff avers that she was disturbed by such comments because they were racially and ethnically disparaging. (*Id.*) Plaintiff then broadly asserts that "[t]hroughout the course of [her] employment with HSBC," Kourkoutis "made other racially and ethnically disturbing comments." (*Id.*)

Second, plaintiff also newly asserts that Kourkoutis denigrated plaintiff's Hispanic origin when he told her in September 2005 that she should be "more upbeat around customers . . . because they were from a better environment and better culture than the Hispanic and African American clients [she] previously worked around." (*Id.* ¶ 6.) According to plaintiff, Kourkoutis "frequently spoke" about the superiority and sophistication of Rego Park's "demographics" and "constantly made such disparaging comments about minorities." (*Id.* ¶ 8.)

Third, plaintiff claims that Kourkoutis ridiculed her on a frequent basis because of her accent and expressed his inability to understand her because she talked too fast due to her accent. (*Id.* ¶ 7.) In addition, Kourkoutis and Katz allegedly "encouraged co-workers and subordinate employees to harass [her]" thereby subjecting plaintiff to her co-workers' "verbal taunts and insults relating to [her] Spanish accent" and her age. (*Id.* ¶ 10.)

Fourth, plaintiff asserts that "[e]very day [she] was made fun of because of [her] accent" and that Kourkoutis and Katz "continued to be openly hostile towards [her], many times ridiculing [plaintiff] in front of [her] staff." (*Id.* ¶ 13.)

In response to plaintiff's Certification, defendants contend that the court should disregard the abovementioned allegations in plaintiff's Certification because they contradict

her deposition testimony and mischaracterize evidence in the record. (ECF No. 63, Defendants' Reply Memorandum in Support of Summary Judgment ("Defs.' Reply") at 2-3.) "It is well settled in this circuit that a party's affidavit which contradicts [her] own prior deposition testimony should be disregarded on a motion for summary judgment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (internal quotation marks omitted); *Ciullo v. Yellow Book, USA, Inc.*, No. 10-CV-4484, 2012 WL 2676080, at *1 n.1 (E.D.N.Y. July 6, 2012) ("It is of course axiomatic that a party cannot defeat summary judgment by submitting an affidavit that contradicts prior sworn deposition testimony." (internal quotation marks omitted)). Indeed, the Second Circuit has held that "[i]f a party who has been examined at length . . . could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Ciliberti v. Int'l Bhd. of Elec. Workers Local 3*, No. 08-CV-4262, 2012 WL 2861003, at *11 (E.D.N.Y. July 10, 2012).

Upon careful review of the record, the court finds that the new allegations in plaintiff's Certification do not directly contradict her prior deposition testimony. The court acknowledges that, during her multiple depositions, plaintiff

did not raise many of the allegations subsequently included in her Certification, despite her opportunity to do so in response to opposing counsel's comprehensive and detailed questioning. Nonetheless, the newly added allegations do not actually conflict, and are not mutually exclusive, with her earlier deposition testimony. Rather, the Certification sets forth new, albeit conclusory, facts regarding Kourkoutis, Katz, and plaintiff's co-workers.

For example, plaintiff's new allegations regarding Kourkoutis' "other racially and ethnically disparaging comments," his "frequent[] ridicule[] . . . of [her] accent," and his statements about the superiority and sophistication of Rego Park's clientele do not necessarily contradict her deposition testimony that Kourkoutis failed to protect her from her co-workers' abuse; sent her to New Jersey to take licensing classes; screamed at her to concentrate on numbers on a bulletin board; and took away her officer-in-charge privileges. (*Compare* Pl.'s Cert. ¶¶ 5,7, *with* Petrisch Dep. – 1/8/10 at 92:4-94:1, 94:3-96:3, 96:7-97:17, 97:24-98:19, 110:17-19.)

Despite the lack of any *direct* contradiction between the additional allegations in plaintiff's Certification and her prior deposition testimony, the court nevertheless finds that plaintiff's new factual allegations are insufficient to preclude summary judgment because they are generalized, conclusory, and

23

speculative and seek to add assertions that are absent from plaintiff's Complaint and extensive deposition testimony. Indeed, it is well established that "a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment." *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005), *aff'd sub nom. United Magazine Co. v. Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008); *see also Holcomb,* 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."). Indeed, the Second Circuit has noted that "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Research & Dev. Co.*, 410 F.2d at 578). Moreover, a party cannot "amend [her] complaint simply by alleging new facts and theories in [her] memorand[um] opposing summary judgment." *Heletsi v. Lufthansa German Airlines, Inc.*, No. 99-CV-4739, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001).

Here, plaintiff's Certification is riddled with self-serving allegations that were conspicuously absent from plaintiff's Complaint and her deposition testimony. Moreover, these self-serving allegations are abstract and conclusory at best. In fact, plaintiff's Certification does not specify the nature or time frame of Kourkoutis' racially and ethnically disturbing comments, his purported ridicule of her accent, and his statements about the superiority of Rego Park clientele.[10] Nor does plaintiff articulate how Kourkoutis and Katz expressed "hostil[ity] towards [plaintiff]" by "ridiculing [her] in front of [her] staff." (Pl.'s Cert. ¶ 13.) Moreover, among the scant evidence in the record cited by plaintiff in support of her belated allegations is the 2005 Performance Review, in which Kourkoutis assessed plaintiff's strengths and weaknesses. (*Id.*

_____

[10] The court recognizes that a plaintiff may surmount summary judgment "even in the absence of specific details about each incident" if a jury credited plaintiff's "general allegations of constant abuse, which were confirmed by her coworkers." *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997). In *Torres*, the Second Circuit concluded that the generality of the plaintiff's allegations regarding defendant's harassment was not fatal to her claim at summary judgment. *Id.* *Torres*, however, is inapposite and does not require this court to consider plaintiff's bald assertions and conclusory allegations. First, the plaintiff in *Torres* was able to point and quote to repeated statements that corroborated her general allegations of sexual harassment. *Id.* By contrast, plaintiff here merely asserts conclusory allegations, supported only by her feelings or belief of discrimination, without pointing to any corroborating evidence in the record. Second, unlike in *Torres*, none of plaintiff's allegations are confirmed by her coworkers or any other witness or document. *See Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 349 (S.D.N.Y. 2001) (distinguishing *Torres* on the ground that "none of [the] plaintiff's allegations are confirmed by her coworkers"). Finally, *Torres* does not excuse plaintiff's obligation to adduce non-conclusory allegations or evidence to raise a genuine issue of material fact. As such, *Torres* does not salvage plaintiff's nebulous assertions raised for the first time in her Opposition and Certification.

¶ 7.)  Significantly, the allegations in plaintiff's
Certification regarding plaintiff's interpretation of
Kourkoutis' statements about the sophistication and culture of
plaintiff's prior clientele mischaracterize Kourkoutis' comments
in plaintiff's 2005 Performance Review.  As established by the
record, Kourkoutis wrote in the 2005 Performance Review that
"the demographic area . . . in Rego Park and client investment
sophistication is different and higher than in Brooklyn." (2005
Performance Review at 4.)  Contrary to plaintiff's conclusory
allegations in her Certification, Kourkoutis did not state that
the demographic was predominately white, did not state that
plaintiff's former clientele was less cultured, and only opined
on the client *investment* sophistication in the 2005 Performance
Review. (*See id.*)

        In another mischaracterization of the 2005 Performance
Review, plaintiff claims that Kourkoutis told her that she
talked too fast due to her "accent." (Pl.'s Cert. ¶ 7.)  In the
2005 Performance Review, however, Kourkoutis reported that
plaintiff occasionally "speaks so quickly" that he must "ask her
to repeat herself." (2005 Performance Review at 6.)  Nowhere in
the 2005 Performance Review did Kourkoutis state that she spoke
too fast because of her accent. (*See generally id.*) Nor does the
record evidence provide support for plaintiff's position that
this comment was motivated by discriminatory animus against

plaintiff's national origin.  In fact, Kourkoutis testified that he recognized that her ability to speak Spanish was of benefit to the Rego Park Branch, which provides probative evidence that Kourkoutis harbored no ill-will towards her language or accent. (Kourkoutis Dep. at 11:17-12:25.)

Finally, as accurately noted by defendants, plaintiff's Certification is nothing more than a last-ditch effort to salvage her claims and belatedly pile on new allegations of which defendants had no notice until plaintiff's Opposition. (*See* Defs.' Reply at 2.)  A certification or affidavit opposing a summary judgment motion is not a vehicle for plaintiff to reshape the theory and underlying facts of her discrimination claims as originally pled in her Complaint. *See Heletsi*, 2001 WL 1646518, at *1 n.1.  Accepting the foregoing speculative and nebulous allegations included for the first time in plaintiff's Certification would be manifestly unjust to defendants, who have already spent a considerable amount of time, money, and effort to defend against the claims alleged in the Complaint and subsequently developed in plaintiff's multiple depositions.  Permitting plaintiff to add speculative and conclusory allegations to bolster her claims after defendants have moved for summary judgment without permitting defendants to conduct discovery on those new allegations would make plaintiff's case a moving target and would all but eviscerate

defendants' opportunity to obtain summary judgment.  This disadvantage to defendants is particularly pronounced in this case because plaintiff had the opportunity to testify about the new allegations during her depositions, which spanned multiple days and involved detailed questioning eliciting the type of testimony that plaintiff now raises for the first time in her Certification.  Defendants were thereby denied the opportunity to ask follow-up questions and obtain more specific information. The court consequently finds that the new facts alleged in plaintiff's Certification, although not directly contradicted by her excerpted deposition testimony, amount to belated conclusory and speculative assertions that fail to create a genuine issue of material fact.  Accordingly, the court need not discuss the aforementioned newly raised allegations in the analysis of plaintiff's claims below.[11]

## III. Hostile Work Environment Claims

        Plaintiff asserts hostile work environment claims pursuant to Title VII, the NYSHRL, and the NYCHRL, alleging employment discrimination based on her national origin, age, and gender.  As explained below, plaintiff has failed to raise a genuine issue of material fact with regard to her hostile work

---

[11] Even if the court improperly considered plaintiff's belated attempt to add new allegations not previously included in her Complaint or deposition testimony, summary judgment would be warranted because, as previously stated, advancing such conclusory, abstract allegations does not discharge plaintiff's burden to raise a genuine issue of material fact for trial.

environment claims under Title VII and the NYSHRL and has abandoned her hostile work environment claim under the NYCHRL.

## A. Title VII and the NYSHRL

Hostile work environment claims brought under Title VII and the NYSHRL are governed by the same analytical standards. *See Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451-52 (E.D.N.Y. 2011) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)). To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). As such, plaintiff must establish that the allegedly discriminatory conduct was (1) "because of" plaintiff's age, sex, or national origin and (2) sufficiently

severe or pervasive thereby altering her work conditions.[12] *See Alfano v. Costello*, 294 F.3d 365, 373-77 (2d Cir. 2002).

### 1. "Because Of" Plaintiff's Protected Characteristic

First, plaintiff must demonstrate that the conduct giving rise to the alleged hostile work environment occurred "because of [her] membership in a protected class." *Ventimiglia v. Hustedt Chevrolet*, No. 05-CV-4149, 2009 WL 803477, at *6 (E.D.N.Y. Mar. 25, 2009). Indeed, "'[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . *protected characteristic*,' such as race or national origin." *Rivera*, 702 F.3d at 694 (alterations in original) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *Montgomery v. Chertoff*, No. 03-CV-5387, 2007 WL 1233551, at *14 (E.D.N.Y. Apr. 25, 2007) ("The Second Circuit has stated that only conduct prompted by plaintiff's membership in a protected class 'contributes to a hostile work environment claim.'" (quoting *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 413 (S.D.N.Y. 2006)). "'[A]n environment which is equally harsh for both men

_____

[12] The court acknowledges that plaintiff must also satisfy a third element: "to succeed on a Title VII or New York State Human Rights Law hostile work environment claim *against an employer*, the plaintiff must show that 'a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Smith*, 798 F. Supp. 2d at 452 (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004)). The court, however, need not reach this element, as plaintiff has failed to establish that she was subjected to severe or pervasive harassment because of her age, national origin, or sex.

and women or for both young and old does not constitute a hostile working environment under the civil rights statutes.'" *Ventimiglia*, 2009 WL 803477, at *6 (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).

Accordingly, it is "important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or connection to the claimed ground of discrimination." *Alfano*, 294 F.3d at 377. To do otherwise would render the federal court system "a court of personnel appeals." *Id.; see also Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001) ("'[The court's] role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.'" (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)); *Cid v. ASA Inst. of Bus. & Computer Tech., Inc.*, No. 12-CV-2947, 2013 WL 1193056, at *6 (E.D.N.Y. Mar. 22, 2013) ("Title VII . . . does not set forth a general civility code for the American workplace." (internal quotation marks omitted)); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) ("[T]he NYCHRL, like Title VII and the NYSHRL, is not a general civility code." (internal quotation marks omitted)).

In support of her hostile work environment claims, plaintiff advances the following allegations that appear facially neutral as to plaintiff's age, sex, and national origin:

- Kourkoutis screamed at plaintiff to "concentrate," (Petrisch Dep. – 2/24/11 at 138:24-139:24);

- Kourkoutis failed to prevent plaintiff's co-workers from making fun of her, (Petrisch Dep. – 1/8/10 at 89:4-13);

- Kourkoutis took away her privileges as officer-in-charge of the Rego Park Branch, (*id.* at 97:24-98:19);

- Kourkoutis required her to take classes in New Jersey rather than New York, (*id.* at 92:4-94:1);

- Kourkoutis suggested that plaintiff take more time off after her disability leave, (*id.* at 94:3-96:3);

- Greenfield, Ali, and Nittis made fun of plaintiff's way of dressing and walking, (*id.* at 86:5-8);[13]

- Greenfield, Ali, and Nittis wrote a "big zero" next to her name, (*id.* at 71:18-20, 86:5-87:13);

- Greenfield, Ali, and Nittis told plaintiff that they hated her, (*id.* at 72:17-19);

---

[13] As noted *supra* at footnote 8, the court disregards plaintiff's testimony regarding Greenfield, Ali, and Nittis' purported derogatory remarks about how plaintiff spoke because such testimony is not based on personal knowledge and is inadmissible hearsay.

- Greenfield, Ali, and Nittis harassed her because plaintiff complained that Greenfield ran her husband's business in the back office, (Petrisch Dep. – 2/24/11 at 151:18-153:21); and

- Kourkoutis, Katz, and Dray did not invite plaintiff to certain "pow wow" meetings, (Petrisch Dep. – 1/8/10 at 138:12-139:17).

Apart from plaintiff's unsupported and conclusory assertions to the contrary, the foregoing allegations are neutral as to plaintiff's age, sex, and national origin. Plaintiff has pointed to no record evidence supporting the inference that the abovementioned incidents of alleged mistreatment occurred "because of" any of her protected characteristics. Instead, plaintiff merely alleges her belief that those actions were based on her age, sex, and/or national origin. Nonetheless, it is well established that plaintiff's "'feelings and perceptions of being discriminated against are not evidence of discrimination.'" *Lee v. Sony BMG Music Entm't, Inc.*, No. 07-CV-6733, 2010 WL 743948, at *9 (S.D.N.Y. Mar. 3, 2010) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)); *Paolercio v. Allstate Ins. Co.*, No. 09-CV-983, 2011 WL 4628748, at *6 (E.D.N.Y. Sept. 30, 2011) ("Although supported by [plaintiff's] testimony, these feelings of

discrimination do not amount to evidence that the court can credit.").

By itself, the facial neutrality of plaintiff's aforementioned allegations does not automatically preclude their consideration by the court when determining the viability of plaintiff's hostile work environment claims. Indeed, "[f]acially neutral incidents may be included . . . among the 'totality of circumstances' that courts consider in any hostile work environment claim," provided that plaintiff offers "some circumstantial or other basis for inferring that incidents . . . neutral on their face were in fact discriminatory." *Alfano*, 294 F.3d at 378; *see also Woods v. Newburg Enlarged City Sch. Dist.*, 288 F. App'x 757, 759 (2d Cir. 2008) ("*Alfano*'s observation that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination presumed evidence of multiple acts of harassment, some overtly sexual and some not." (internal quotation marks omitted)); *Khan v. HIP Centralized Lab. Servs., Inc.*, No. 03-CV-2411, 2007 WL 1011325, at *5 (E.D.N.Y. Mar. 30, 2007) ("Because [plaintiff] is relying on facially neutral incidents, he must offer some additional evidence from which a reasonable jury could infer that these acts were, in fact, discriminatory."). In *Alfano*, the Second Circuit ultimately determined that there was no evidence in the record indicating that the defendant's comments and actions,

many of which were sex-neutral on their face, were motivated by the plaintiff's sex. 294 F.3d at 378.  The *Alfano* court further clarified that four sex-related incidents, none of which were perpetrated by the defendant, did not justify any inference that the facially sex-neutral incidents involving the defendant were "because of" plaintiff's sex. *Id.*

*Alfano* proves instructive in the instant case.  Like the plaintiff in *Alfano*, plaintiff here offers a laundry list of facially neutral allegations in an attempt to establish that the hostility of her work environment at the Rego Park Branch was because of her age, sex, and/or national origin.  Plaintiff, however, has failed to present any evidentiary basis to infer that the incidents alleged were based on her age, sex, or national origin or otherwise animated by discriminatory intent. Even viewing the evidence in the light most favorable to the plaintiff, the record evidence and deposition testimony provide no support for an inference that the facially neutral conduct of Kourkoutis, Katz, and plaintiff's three female co-workers described above was motivated by plaintiff's age, sex, or national origin.

To the contrary, plaintiff's own evidence indicates that defendant Kourkoutis made efforts to ensure a workable environment for all employees at the Rego Park Branch; specifically, Kourkoutis sent an e-mail warning his staff that

he "certainly [did] not expect anyone to be [disrespectful] to any colleagues." (Kourkoutis E-mails at 6.) Moreover, with respect to the alleged misconduct of her three female co-workers, plaintiff acknowledged that they harassed her primarily because plaintiff complained about Greenfield running her husband's business at work, a feature wholly unrelated to any of plaintiff's protected characteristics. (Petrisch Dep. – 2/24/11 at 151:18-153:21.) Additionally, plaintiff conceded that, although Kourkoutis, Katz, and Dray did not invite her to certain "pow wow" meetings, they invited at least one other woman, Nittis, to a "pow wow" meeting. (Petrisch Dep. – 1/8/10 at 140:4-10.) As such, the record lacks sufficient circumstantial or direct evidence to give rise to an inference that the facially neutral misconduct of Kourkoutis, Katz, Greenfield, Nittis, and Ali was in fact discriminatory. At worst, plaintiff's allegations describe nothing more than "the ordinary tribulations of the workplace, such as the sporadic use of abusive language," and merely indicate a poor working relationship between plaintiff, her supervisor, and her co-workers. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Upon review of the record, the court finds that the only non-conclusory allegations of harassment that occurred "because of" one of plaintiff's protected characteristics were

Katz's three age-based remarks that plaintiff was "too old,"
which the court accepts as true for purposes of this motion.[14]
(Petrisch Dep. – 1/8/10 at 127:2-129:20.)  Yet, as in *Alfano*,
where four sex-related incidents failed to create an inference
of discriminatory animus as to several sex-neutral allegations,
Katz's three age-based statements in this case are insufficient
to justify any inference that the facially neutral conduct and
comments of Kourkoutis, Katz, and plaintiff's three female co-
workers were "because of" her age, sex, or national origin.
Critically, plaintiff conceded that Katz was the only person to
make comments to her about her age. (Petrisch Dep. – 1/8/10 at
74:11-19.)

Because "only conduct prompted by plaintiff's
membership in a protected class contributes to a hostile work
environment claim," *Montgomery*, 2007 WL 1233551, at *14
(internal quotation marks omitted), the court limits the
remainder of its analysis of plaintiff's hostile work
environment claims – i.e., whether the harassment was severe or
pervasive – to the conduct and comments motivated "because of"
plaintiff's protected characteristics: namely, Katz's three
statements based on plaintiff's age.

---

[14] As previously noted, plaintiff has not asserted a federal age-discrimination claim under the ADEA in this action.  As such, Katz's three age-based remarks are evaluated under the NYSHRL only in the following section because age is not a protected characteristic/class under Title VII. *See* 42 U.S.C. § 2000e-2.

## 2. *"Severe or Pervasive" Harassment*

A plaintiff must demonstrate that the alleged harassment is sufficiently "severe or pervasive" such that it alters the conditions of the plaintiff's employment and creates an abusive working environment. *See Ventimiglia*, 2009 WL 803477, at *5. "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (quoting *Harris*, 510 U.S. at 21). Plaintiff must therefore "demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted'" to have altered the conditions of her working environment. *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).

In determining whether a plaintiff has satisfied this burden, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (citing *Harris*, 510 U.S. at 23). Relevant factors include: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "Isolated acts, unless very serious,

38

do not meet the threshold of severity or pervasiveness." *Id.*
(citing *Brennan*, 192 F.3d at 318); *Williams v. Cnty. of
Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that "to
meet [her] burden, the plaintiff must show more than a few
isolated incidents" (internal quotation marks omitted)).

Here, Katz's three statements that plaintiff was "too
old" constitute the only alleged harassment that occurred
"because of" plaintiff's protected characteristic of age.
(Petrisch Dep. – 1/8/10 at 127:2-129:20.)   Such episodic
statements do not sufficiently demonstrate that the harassment
purportedly suffered by plaintiff was sufficiently severe or
pervasive such that the conditions of plaintiff's employment
were altered.  As established by the record, Katz's three
statements were not frequent, continuous, particularly severe,
or physically threatening, and there is no evidence that his
three age-based remarks unreasonably interfered with plaintiff's
work performance, altered the conditions of plaintiff's
employment or created an abusive working environment. *See
Rivera*, 702 F.3d at 693.  Although Katz's age-based derogations
may have been offensive to plaintiff, the totality of the
circumstances indicates that no rational fact-finder could find
that a hostile work environment existed based on Katz's three
sporadic insults. *See, e.g.*, *Shih v. City of New York*, No. 03-
CV-8279, 2006 WL 2789986, at *1, 6 (S.D.N.Y. Sept. 28, 2006)

("The harassment alleged by Plaintiff is based on the three age-related remarks made by Saini . . . .  The infrequency of the alleged acts undermines Plaintiff's claim."); *Mark v. Brookdale Univ. Hosp.*, No. 04-CV-2497, 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005) (finding two "alleged isolated remarks" by plaintiff's supervisor insufficient to establish hostile work environment claim); *Pagan v. N.Y. State Div. of Parole*, No. 98-CV-5840, 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (finding that two racially derogatory remarks by supervisor to plaintiff did "not amount to the sort of extremely serious behavior required to give rise to a hostile work environment under Title VII" (internal quotation marks omitted)).  Rather, Katz's statements that plaintiff was "too old," although potentially motivated by age-based animus, constitute isolated instances of harassment that do not give rise to severe or pervasive harassment. *Alfano*, 294 F.3d at 374.

Notably, even if the court also considered the facially neutral allegations as to plaintiff's age, sex, and national origin *and* the newly raised allegations in plaintiff's Certification, plaintiff would still be unlikely to succeed on her hostile work environment claims.  Taken together, the discriminatory conduct alleged by plaintiff was not physically threatening, was not particularly severe, and did not alter the conditions of plaintiff's employment, create an abusive working

environment, or unreasonably interfere with plaintiff's work performance. In *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 18, 2011), the district court held that the plaintiff's numerous allegations — that supervisors excluded her from meetings, questioned her hours, yelled and talked down to her, diminished her responsibilities, excluded her from lunch gatherings, and did not intervene when co-workers refused to give her needed documents and that one employee made a racist remark – were insufficient to demonstrate a severe or pervasive hostile work environment. Rather, the *Davis-Molinia* court noted that the "gravamen of [plaintiff's] claims is rooted in conduct that amounts to nothing more than workplace dynamics – that is, personal enmity or personality conflicts." *Id.*

As in *Davis-Molinia*, plaintiff here alleges conduct that amounts to nothing more than workplace dynamics. Plaintiff's grievances arise not out of the sustained discriminatory actions of her co-workers but rather from the personal enmity of her colleagues. Thus, even assuming the court considered plaintiff's facially neutral allegations regarding defendants' actions and the conclusory allegations newly raised in her Certification, the court finds that plaintiff's allegations are nevertheless insufficient to establish severe or pervasive conduct giving rise to an

actionable hostile work environment claim. *See Benn v. City of New York*, No. 07-CV-326, 2011 WL 839495, at *9-10 (noting that "the alleged incidents — laughing at and correcting Plaintiff's accent, questioning Plaintiff about his education, commenting vaguely about his age, and talking to him in an allegedly condescending manner" were insufficient to establish a severe or pervasive work environment); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 680 (S.D.N.Y. 2011) (holding that allegations that supervisors smirked and laughed at plaintiff and her pronunciation of words, criticized her manner of speech, ridiculed her speech, ignored her in meetings, and micromanaged her work were insufficiently severe or pervasive to establish a Title VII or NYSHRL hostile work environment claim). At most, plaintiff's allegations constitute "repeated, vague and conclusory" assertions regarding defendants' harassment, supported only by plaintiff's beliefs and feelings. *See Ifill v. United Parcel Serv.*, No. 04-CV-5963, 2008 WL 2796599, at *10 (S.D.N.Y. July 17, 2008).

Accordingly, because plaintiff has failed to raise a genuine issue of material fact as to her hostile work environment claims under Title VII and NYSHRL, those claims must be dismissed.

**B.    NYCHRL**

Unlike Title VII and the NYSHRL, "the NYCHRL allows liability to attach for harassing conduct that does not qualify as 'severe or pervasive.'" *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 268 (E.D.N.Y. 2009); *see also Fenn v. Verizon Commc'ns, Inc.*, No. 08-CV-2348, 2010 WL 908918, at *10 (S.D.N.Y. Mar. 15, 2010) ("Under the NYCHRL, it appears that a somewhat more relaxed standard applies for establishing a hostile work environment claim."). The First Department of the New York Appellate Division has held that, under the NYCHRL, "the primary issue for a trier of fact in harassment cases . . . is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of [a protected characteristic]." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (N.Y. App. Div. 2009). Indeed, New York State courts have recognized that the "New York City Human Rights Law was intended to be more protective than the state and federal counterpart." *Farrugia v. N. Shore Univ. Hosp.,* 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006).

Irrespective of the more lenient standard set forth under the NYCHRL, plaintiff has abandoned all of her claims under the NYCHRL because she did not oppose defendants' motion for summary judgment on her NYCHRL claims. "Federal courts may deem a claim abandoned when a party moves for summary judgment

on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); *see, e.g., Robinson v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-834, 2012 WL 1980410, at *6 (E.D.N.Y. May 31, 2012) ("[T]he Court considers this claim abandoned because plaintiff has failed to address it in her opposition brief."); *Gaston v. City of New York*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) ("[Plaintiff] failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion. . . . Therefore, these claims are dismissed as abandoned." (citations omitted)); *Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-1724, 2009 WL 3154312, at *6 (S.D.N.Y. Sept. 30, 2009) ("[P]laintiff failed to address defendants' arguments regarding this claim and therefore has abandoned it."), *aff'd*, 396 F. App'x 781 (2d Cir. 2010). In her Opposition, plaintiff does not invoke the NYCHRL or the municipal statute's more lenient standard for hostile work environment claims. (*See generally* Pl.'s Opp.) In fact, plaintiff explicitly states that her Complaint "was brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, § 1981 and the New York State Human Rights Law," conspicuously leaving out the NYCHRL. (*Id.* at 2.) Nowhere in her Opposition or her Certification does plaintiff refer to any claims brought pursuant to the NYCHRL. (*See generally id.*; Pl.'s

Cert.)  Moreover, in addressing defendants' arguments on her

hostile work environment claims, plaintiff cites exclusively to

case law construing the standard for hostile work environment

claims under Title VII and the NYSHRL, rather than the more

lenient standard set forth under the NYCHRL. (Pl.'s Opp. at 4-

8.)  Accordingly, the court finds that plaintiff has abandoned

her hostile work environment claims under the NYCHRL.

Even assuming, without deciding, that plaintiff did

not abandon her hostile work environment claims under the

NYCHRL, plaintiff has not discharged her burden to raise a

genuine issue of material fact on the issue of whether she was

subjected to unequal treatment because of her age, sex, or

national origin.  As explained above, the evidence upon which

plaintiff relies is conclusory, is based primarily upon her

belief that HSBC employees were discriminating against her when

they purportedly mistreated her, and, in any event, fails to

give rise to an inference that she was treated unequally because

of her protected characteristics.  Instead, defendants have

demonstrated that "little or no evidence may be found in support

of [plaintiff's] case." *Gallo*, 22 F.3d at 1223–24.  Thus, even

if plaintiff preserved her hostile work environment claims under

the NYCHRL, plaintiff would be unable to surmount summary

judgment because she has failed to raise a triable issue of

material fact as to those claims.

## IV.  Retaliation

In her Opposition, plaintiff failed to defend against or address any of the arguments in defendants' summary judgment motion as to her initial retaliation claims. (*See generally* Pl.'s Opp.)  In her Certification, Rule 56.1 Response, and at Oral Argument, however, plaintiff continued to pursue her retaliation claims.  Consequently, the court, in an abundance of caution, does not deem plaintiff's retaliation claims abandoned. Nonetheless, plaintiff's retaliation claims fail because she has not adduced evidence sufficient to give rise to a genuine issue of material fact.

To establish a *prima facie* case of retaliation under Title VII and the NYSHRL,[15] plaintiff must "adduce evidence sufficient to permit a rational trier of fact to find [1] that . . . he engaged in protected participation or opposition . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester*

---

[15] Retaliation claims brought under the NYSHRL and NYCHRL are subject to the same analysis as Title VII retaliation claims. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312-13 (2003); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.1 (2d Cir. 2001).  As discussed above, however, plaintiff abandoned her claims under the NYCHRL.  Thus, in ruling on defendants' summary judgment motion, the court need only determine the viability of plaintiff's retaliation claims under federal and state law.

*Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (alterations and omissions in original) (internal quotation marks omitted).

Plaintiff's retaliation claims are largely predicated upon allegations of defendants' retaliatory actions resulting from her complaints about HSBC's fraudulent banking activities. Specifically, in her Complaint, plaintiff alleges that in retaliation for complaining that Kourkoutis and Katz "were violating federal, state and local banking laws in illegally offering annuities to Hispanic, elderly and Non-English speaking customers under the guise of federal [sic] protected Certificate of Deposits," she was subjected to a "daily barrage of threats, insults, verbal abuse, a hostile work environment and derogatory comments predicated upon" her age and national origin. (Compl. ¶¶ 15-16.) Plaintiff's retaliation claims, however, fail as a matter of law because she has not participated in any protected activity within the meaning of the anti-discrimination laws regarding unlawful employment practices.[16]

---

[16] Defendants correctly observe that plaintiff, in responding to the instant summary judgment motion and during Oral Argument, appears to have raised a new retaliation claim based on plaintiff's complaints to Kourkoutis about her co-workers' alleged derogatory and discriminatory comments. (*See* Pl.'s Rule 56.1 Resp. ¶ 7; Tr. at 11-15.) Plaintiff's newly raised retaliation claim represents a significant departure from the retaliation claim pled in her Complaint. As described above, plaintiff's Complaint alleges that "subsequent to informing defendants that they were violating the law [regarding the sale of securities by falsely representing that they were certificates of deposit,] respondents subject[ed] plaintiff to a daily barrage of threats, insults, verbal abuse, a hostile work environment and derogatory comments." (Compl. ¶ 16.) By contrast, for the first time in her

The Second Circuit has long held that "[n]ot every act by an employee in opposition to . . . discrimination is protected.  The opposition must be directed at an unlawful employment practice by an employer, not an act of discrimination by an individual." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (internal quotation marks omitted). In *Wimmer*, the plaintiff police officer alleged that he was given poor evaluations and ultimately terminated for reporting racial slurs made by fellow police officers against black citizens and for questioning another officer's stops of Hispanic drivers without cause. *Id.* at 134-35.  The Second Circuit held that plaintiff's claim was not actionable because "his opposition was not directed toward an unlawful *employment practice* of his employer." *Id.* at 135.

---

Certification, plaintiff argued that she faced retaliation shortly after complaining to Kourkoutis about her co-workers' alleged discriminatory hostility. (Pl.'s Cert. ¶ 10.)  The court declines to entertain plaintiff's new claim, particularly because defendants, who have expended significant resources in defending against plaintiff's claims as they were alleged in her Complaint, would be prejudiced by the court's consideration of the new retaliation claim. *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001); *Bush*, 452 F. Supp. 2d at 406; *Heletsi,* 2001 WL 1646518, at *1 n.1 ("A party cannot amend [her] complaint simply by alleging new facts and theories in their memoranda opposing summary judgment.").  Courts have repeatedly held that "[a]n opposition to a summary judgment motion is not the place to raise new claims." *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (internal quotation marks omitted).  Second, even if the court entertained plaintiff's new retaliation claim, the court is skeptical that plaintiff has discharged her burden to adduce evidentiary material sufficient to give rise to a genuine dispute of material fact as to the new retaliation claim. Neither her deposition testimony nor her Opposition demonstrates a causal connection between any protected activity and the unspecified adverse employment action she purportedly suffered.  Indeed, plaintiff has failed to proffer any evidence, apart from her personal belief, establishing a causal connection between her complaints and any adverse employment action.

In *McMenemy*, the Second Circuit, construing *Wimmer*, further

clarified that "the plaintiff's claim in *Wimmer* failed because

the plaintiff's activities were directed at the behavior of co-

employees toward third parties and were unrelated to an

employment practice made illegal by Title VII." 241 F.3d at 283.

Similarly, the district court in *Kunzler v. Canon,*

*USA, Inc.,* 257 F. Supp. 2d 574, 579-80 (E.D.N.Y. 2003), held

that "acts of discrimination against private individuals, who

are not in an employment relationship with the person complained

about, are not within the area of unlawful employment practices

prohibited by Title VII." *See also Russell v. Aid to*

*Developmentally Disabled, Inc.*, No. 12-CV-389, 2013 WL 633573,

at *16 (E.D.N.Y. Feb. 20, 2013) ("[T]he Court notes that

plaintiff's claim that she was terminated in retaliation for her

complaints to outside agencies regarding the care and treatment

of Northville residents is not cognizable under Title VII. . . .

The alleged mistreatment and abuse of residents at the

Northville facility is not an 'unlawful employment practice'

prohibited by Title VII." (citations omitted)); *Berry v. Empire*

*Homes Servs. LLC*, No. 06-CV-2354, 2010 WL 1037948, at *10

(E.D.N.Y. Mar. 18, 2010) (holding that plaintiff's complaints to

management that the company was discriminating against African-

American and Hispanic customers did not rise to the level of

protected activity because the alleged discriminatory conduct was not directed at employees).[17]

Similar to the claims in *Wimmer* and its progeny, plaintiff's retaliation claims in this case, as pled in her Complaint, do not concern protected activity because her complaints were directed at alleged discriminatory conduct towards HSBC's customers and potential fraudulent activity unrelated to any employment relationship between plaintiff and HSBC. Indeed, plaintiff explained that she was retaliated against because she had complained about compliance with procedures. (Petrisch Dep. – 1/8/10 at 86:5-87:9.) For example, plaintiff explained that she knows "a hundred percent" that her poor performance review was in retaliation for reporting "fraudulent activities." (Petrisch Dep. – 2/24/11 at 142:4-17.) Plaintiff also testified that she "know[s]" that she received the September 2005 Action Plan "because [she] was a whistleblower." (Petrisch Dep. – 11/23/10) at 78:7-79:6.) Finally, plaintiff averred that Kourkoutis took away her

---

[17] These principles apply to claims brought pursuant to the NYSHRL and NYCHRL because, as noted above, retaliation claims under the NYSHRL and NYCHRL are "analytically identical" to Title VII. *McDowell v. T-Mobile USA, Inc.*, 307 F. App'x 531, 531 n.1 (2d Cir. 2009); *Foxworth v. Am. Bible Soc.*, No. 03-CV-3005, 2005 WL 1837504, at *4 (S.D.N.Y. July 28, 2005) ("*Wimmer* and its progeny make clear, however, that an allegation of discriminatory conduct directed at third parties . . . does not state a cognizable claim of employment discrimination. Thus, to the extent that plaintiff's claims of discrimination arise out of alleged discrimination against [third parties], rather than against plaintiff herself, such claims may not be pursued under Title VII or related state and municipal anti-discrimination statutes."), *aff'd*, 180 F. App'x 294 (2d Cir. 2006).

"privileges" of serving as the officer in charge of the branch during his absence in part because of her complaints about Rego Park Branch's alleged fraudulent banking practices. (Petrisch Dep. – 1/8/10 at 97:24-98:19.) Accordingly, plaintiff's retaliation claims, which are predicated upon complaints about defendants' allegedly fraudulent sale of annuities as Certificates of Deposits and defendants' targeting of minorities when doing so, are not anchored to any protected activity against unlawful employment practices. The court therefore grants summary judgment to defendants and dismisses plaintiff's retaliation claims.

## V.    Section 1981

Plaintiff failed to contest or respond to any of the legal arguments contained in defendants' summary judgment motion regarding her Section 1981 claim. Indeed, plaintiff's Opposition is bereft of any allegations or arguments related to her Section 1981 claim. (*See generally* Pl.'s Opp.) Nor did plaintiff press her Section 1981 claim during Oral Argument on the instant motion. (*See generally* Tr.) Accordingly, the court deems plaintiff's Section 1981 claim abandoned and, based on a review of the record, grants summary judgment in favor of defendants. *See Taylor*, 269 F. Supp. 2d at 75.

Moreover, even if plaintiff did not abandon her Section 1981 claim, defendants correctly observe that "Section

1981 does not prohibit discrimination on the basis of gender . .
. national origin . . . or age" and instead only prohibits
discrimination based on race. *Anderson v. Conboy*, 156 F.3d 167,
170 (2d Cir. 1998) (citations omitted); *Gad-Tadros v. Bessemer
Venture Partners*, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004).
Plaintiff's allegations in her Complaint and throughout this
lawsuit have been limited solely to discrimination based on age,
sex, and national origin. (*See* Compl. ¶¶ 9, 12, 14, 18, 24,27;
Pls.' Opp. at 2.)  Plaintiff has not presented, much less
pursued, any claim for intentional race-based discrimination in
this action.  Accordingly, plaintiff's Section 1981 claim is
dismissed in its entirety.

## VI.  Individual Liability Claims Against Katz and Kourkoutis

Finally, plaintiff asserts that Kourkoutis and Katz
are individually liable under the NYSHRL and the NYCHRL[18] as (A)
employers or (B) aiders/abettors who facilitate, encourage, or
permit unlawful discrimination.  Both claims lack merit and must
be dismissed.

### A.    Individual Liability as "Employer"

In her Opposition, plaintiff failed to address or
respond to any of the legal arguments in defendants' summary
judgment memorandum regarding her individual liability claims

---

[18] As previously indicated, because plaintiff abandoned her NYCHRL
claims, all of which are dismissed, the court addresses only plaintiff's
individual liability claims pursuant to the NYSHRL.

against Kourkoutis and Katz as "employers." (*See generally* Pl.'s Opp.) Accordingly, the court deems these claims abandoned and, on the record before the court, grants summary judgment in favor of defendants on these individual liability claims. *See Taylor*, 269 F. Supp. 2d at 75.

Even if the court reached the merits of plaintiff's individual liability claims against Kourkoutis and Katz as employers, the undisputed facts demonstrate that plaintiff's claims must be dismissed. The NYSHRL prohibits employers from discriminating against an individual "because of an individual's age, race, creed, color, national origin, sexual orientation, . . . [or] sex . . . ." N.Y. Exec. Law §296(1)(a).

In *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984), the New York Court of Appeals set forth a two-pronged test to determine whether an individual with the title of supervisor or manager may be held individually liable as an "employer" pursuant to § 296(1). Under *Patrowich,* an individual may be held individually liable as an employer if he has (1) an "ownership interest" in the company or (2) "any power to do more than carry out personnel decisions made by others." *Id.* The four factors a court may consider under the second prong of the *Patrowich* test include whether the individual had the authority to hire and fire employees, supervised and controlled employee work schedules or employment conditions, determined payment rate

and method, and maintained employment records. *Id.* at 544; *Maher v. Alliance Mortg. Banking Corp.,* 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009).

Turning to the first prong of *Patrowich*, the undisputed record evidence establishes that neither Kourkoutis nor Katz had an ownership interest in HSBC, apart from modest stock options. (Kourkoutis Cert. ¶ 5; Katz Cert. ¶ 2.) As to the second prong, the four factors set forth in *Patrowich* establish that neither Kourkoutis nor Katz had any authority to do anything more than carry out personnel decisions made by other HSBC officers. For example, Katz had no authority to hire and fire employees, did not supervise and control employee work schedules, had no ability to determine payment of HSBC employees, did not maintain employment records, and had no supervisory control or authority over plaintiff. (*See* Katz Cert. ¶¶ 3-4, 6; Katz Dep. at 8:17-24; Defs.' Rule 56.1 Statement ¶ 22.)

Likewise, Kourkoutis had no authority to hire and fire employees without the review of HSBC's Human Resources Department, had no ability to determine pay rate or method, and did not maintain employment records. (Kourkourtis Cert. ¶ 6-8.) Although Kourkoutis did supervise schedules of Rego Park Branch employees, including plaintiff, he did so with the limited authority vested in him by HSBC. (Kourkoutis Cert. ¶ 9.)

Thus, plaintiff's individual liability claims against Kourkoutis and Katz are dismissed.

**B.    Individual Liability as "Aider and Abettor"**

The NYSHRL makes it unlawful "for any person to aid, abet, incite, compel or coerce" acts prohibited by the NYSHRL and NYCHRL. *See* N.Y. Exec. Law §296(6).  Importantly, aiding and abetting "is only a viable theory where an underlying violation has taken place." *Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009); *Nicholson v. Staffing Auth.*, No. 10-CV-2332, 2011 WL 344101, at *2 (S.D.N.Y. Feb. 1, 2011) ("A predicate requirement of aider-and-abettor liability is a finding of primary liability as to the employer."); *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 213 (N.D.N.Y. 2002) ("In order to hold an individual liable under [the aiding and abetting provision], . . . plaintiff must also show that the individual aided or abetted a primary violation of the [NY]HRL committed by another employee *or the business itself*." (alterations in original) (internal quotation marks omitted)). Because plaintiff's underlying discrimination, retaliation, and hostile work environment claims under NYSHRL have been dismissed or otherwise abandoned, plaintiff's claims against Kourkoutis and Katz as aiders and abettors of such alleged discriminatory conduct fail as a matter of law.

Additionally, although plaintiff cursorily asserts that Kourkoutis and Katz coerced and incited plaintiff's staff to "insult, disrespect and [r]idicule plaintiff because of her national origin . . . and age," (Pl.'s Opp. at 10; *see also* Pl.'s Cert. ¶ 10), plaintiff provides absolutely no support in the record and no citation to any evidence to support this conclusory allegation. As a consequence, plaintiff's individual liability claims against Kourkoutis and Katz as "aiders/abettors" is likewise dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court is respectfully requested to enter judgment in favor of defendants and close this case. Counsel for plaintiff, Mr. Stephen C. Jackson, Esq., is respectfully directed to serve a copy of this Memorandum and Order on his client immediately and note service of the same on the docket no later than April 2, 2013. In light of Mr. Jackson's recent suspension from the practice of law before the Eastern District of New York, *see In re Jackson*, No. 13-MC-25 (E.D.N.Y. Jan. 16, 2013), the court has taken the additional precaution of sending by overnight mail, with receipt verification, a copy of this Memorandum and Order to plaintiff at the following addresses, which were procured from documents in the evidentiary record and via web search:

- 350 A Merrick Rd., Apt. K,
  Rockville Centre, NY, 11570; and

- 405 E. 92nd Street, Apt. 20F,
  New York, NY 10128.

The Clerk of the Court is instructed to send a copy of the judgment and an appeals packet to plaintiff at the above two addresses.

**SO ORDERED.**

Dated:     March 28, 2013
           Brooklyn, New York

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge